UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 3:08-cv-495-RJC-DCK

| JACKIE JIMOH, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CHARLOTTE-MECKLENBURG | ) | |
| HOUSING PARTNERSHIP, INC., | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on the defendant's Motion for Summary Judgment (Doc. No. 28) filed January 12, 2010; the plaintiff's Memorandum and Response in Opposition to Summary Judgment (Doc. Nos. 39 & 40) filed February 2, 2010; and the defendant's Reply (Doc. No. 42) filed February 12, 2010. For the reasons stated below, the Court will **GRANT** the defendant's motion.

I.  BACKGROUND

The defendant Charlotte-Mecklenburg Housing Partnership, Inc. ("CMHP") is a non-profit organization that develops and provides affordable housing to low and moderate income families. Patricia Garrett, a white female, has served as President of CMHP since 1989. In 2003, Garrett executed a Succession Plan to replace Clifford Roberts, who planned to retire within the next several years. Roberts served directly under Garrett as Senior Vice President of Business and Finance, with oversight of matters related to finance, accounting, business development, and human resources. Pursuant to the Plan, Roberts was instructed to "over hire" at least one direct subordinate who would gradually assume his responsibilities. And, because Roberts was a Certified Public Accountant ("CPA"), the Plan stated that "[a] CPA will need to be hired, but at a lower salary and with less responsibility that (sic) [Roberts] currently has." (Doc. No. 39-6 at 3).

The plaintiff Jackie Jimoh is a 51-year-old African-American female who holds a bachelor's degree in accounting and a CPA license. In March of 2005, Roberts interviewed the plaintiff, and upon his recommendation, Garrett hired her for the position of Controller.[1] The plaintiff initially reported directly to Roberts and worked primarily in the accounting department at CMHP, although she also worked in other departments including real estate and finance. The plaintiff asserts that Roberts told her at the time of her initial hire that she would be promoted to his position when he eventually retired, but Roberts denies making this representation. (Doc. No. 32: Roberts Aff. ¶ 7). By the end of 2005, the plaintiff had assumed responsibility for CMHP's auditing process, coordinating annual audits with a team of outside auditors.

Lee Cochran is a 36-year-old white male who was hired by CMHP as Vice President of Asset and Risk Management in May of 2003. He holds an undergraduate degree in mechanical engineering and a master's degree in public policy with an emphasis on public housing, but does not hold a CPA license. Initially, Cochran also worked under Roberts and was responsible for ensuring that CMHP complied with its operating agreements for various rental properties. However, like the plaintiff, the scope of Cochran's responsibilities expanded over time as he gained experience at CMHP.

Fred Dodson is a 42-year-old African-American male who was initially hired as Vice President of Real Estate Development in 1997. He holds a bachelor's as well as a juris doctor

---

[1] Although the plaintiff has stated in pleadings that she was hired by Roberts, the Court sees no evidence suggesting that this is the case. Roberts and Garrett both stated in their depositions that Garrett, as President, was the only person at CMHP with the authority to hire the plaintiff. (Doc. No. 41 at 7; Doc. No. 39-2 at 9). The plaintiff's offer letter stating her title and salary was signed by Garrett, not Roberts. (Doc. No. 30-3). Moreover, the plaintiff's own deposition testimony recognized Garrett's ultimate authority over hiring decisions at CMHP. (Doc. No. 39-1 at 12).

degree.

In late 2006, Roberts stepped down as Vice President of Business and Finance, taking on a less demanding role as Special Projects Officer until he fully retired the following year. In response, Garrett eliminated the position of Senior Vice President of Business and Finance and distributed its responsibilities among the plaintiff, Cochran, and Dodson. Dodson absorbed Roberts's direction over human resources and office management. Cochran assumed an expanded role managing real estate development and finance. The plaintiff, the only other CPA besides Roberts, became directly responsible for CMHP's accounting. In July of 2007, Garrett changed Dodson's title to Chief Operating Officer ("COO") and Cochran's title to Chief Financial Officer ("CFO"), giving each a pay raise. Although CMHP's hiring policy generally required it, neither the COO nor the CFO position was advertised internally to other employees. The plaintiff remained in her position as Controller, her salary did not change, and Cochran became her direct supervisor.

On November 29, 2007, the plaintiff filed a charge of discrimination with the EEOC, alleging that CMHP's failure to promote her was discriminatory. In January of 2008, the plaintiff discovered that one of her subordinate employees was bypassing her and communicating directly with CMHP's outside auditing team. The plaintiff questioned Cochran whether her authority over audits had been diminished, and he replied that her job duties had not changed. Two days later, on January 30, the plaintiff filed a second charge with the EEOC alleging that she was being retaliated against for filing her initial charge of discrimination. In the months that followed, the plaintiff alleges losing certain of her job responsibilities, including and perhaps most significantly, her responsibility of making monthly financial reports to the CMHP Board of Directors. The plaintiff also alleges that she experienced "being glared at, being ignored, [and] not spoken to" by Garrett and other unnamed employees. (Doc. No. 33-1 at 89).

On June 20, 2008, the plaintiff tendered her letter of resignation from CMHP. (Doc. No. 29-9 at 2). On September 30, 2008, and January 12, 2009, the EEOC notified the plaintiff of her right to sue on the charges that she submitted. Thereafter, the plaintiff timely filed this lawsuit against CMHP alleging: (1) discrimination on the basis of race, gender, and age, in violation Title VII of the Civil Rights Act of 1964, the ADEA, and 42 U.S.C. § 1981; (2) intentional infliction of emotional distress; (3) negligent infliction of emotional distress; (4) negligent supervision and retention of an employee; (5) breach of contract; and (6) retaliation, in violation of Title VII and § 1981. On January 12, 2010, CMHP moved for summary judgment on all claims.

## II.   LEGAL STANDARD

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord Sylvia Dev. Corp. v. Calvert County, Md.,

4

48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the Record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677, 557 U.S. ___ (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## III. DISCUSSION

The plaintiff, in her memorandum opposing summary judgment, failed to address CMHP's arguments regarding the following claims: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; and (3) negligent retention of an employee. Against CMHP's well-reasoned arguments for summary judgment, the plaintiff's failure to respond amounts to an effective waiver of these claims. See Brand v. N.C. Dep't of Crime Control & Pub. Safety, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) (citing Reid v. Albemarle Corp., No. Civ.A. 96-7564-A-1, 2002 WL 31526451, at *1 (M.D. La. June 26, 2002); Toney v. Rosewood Care Ctr., Inc., No. 98C693, 2001 WL 1105127, at *5 (N.D. Ill. Sept. 20, 2001); Ostergren v. Vill. of Oak Lawn, 125 F. Supp. 2d 312, 323 (N.D. Ill. 2000)). Accordingly, the Court will enter summary judgment in favor of CMHP on Counts Two, Three, and Four. The remaining contested claims relate to the plaintiff's allegations of discrimination and retaliation under Title VII, the ADEA, and § 1981. The Court addresses only these claims in the discussion that follows.

### A. Claims under Title VII, the ADEA, and § 1981 for Failure to Promote

The plaintiff alleges that CMHP discriminated against her based on her gender, race, and age when it failed to promote her to the CFO position. In order to prevail on a disparate treatment claim based on gender, race, or age, a plaintiff may proceed by either the "pretext" or "mixed-motive"

5

evidentiary framework. See Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284-85 (4th Cir. 2004) (en banc). Under the mixed motive framework, a plaintiff may establish a claim of discrimination by offering direct or circumstantial evidence that age, sex, or race was a motivating factor, at least in part, behind the employer's adverse employment decision. See Price Waterhouse v. Hopkins, 490 U.S. 228, 241 (1989); Hill, 354 F.3d at 284. Under the pretext framework, a plaintiff must first establish a prima facie case of discrimination and then demonstrate that any permissible reason for taking the adverse employment action proffered by the employer is actually a pretext for discrimination. See Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807 (1973); Hill, 354 F.3d at 285. Regardless of the framework used and whether a plaintiff puts forth direct or circumstantial evidence, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153 (2000).

Here, the plaintiff has elected to proceed under the pretext evidentiary framework, often labeled as the McDonnell Douglas framework. As such, her claims under Title VII, the ADEA, and § 1981 for failure to promote merge into a single burden-shifting analysis. See Lightner v. City of Wilmington, 545 F.3d 260, 263 n.* ("[T]he McDonnell Douglas framework applies to discrimination claims under Title VII, § 1981, and § 1983.") (citing Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004)); EEOC v. Warfield-Rohr Casket Co., Inc., 364 F.3d 160, 163 (4th Cir. 2004) ("An ADEA claim may be established through . . . a 'pretext' framework identical to the McDonnell Douglas burden-shifting analysis used in Title VII cases.") (citing Hill, 354 F.3d at 284-85). First, the plaintiff must establish a prima facie case of discrimination by showing by a preponderance of the evidence that: (1) she is a member of a protected class; (2) her employer had

6

an open position for which she applied or sought to apply; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. Brown v. McLean, 159 F.3d 898, 902 (4th Cir. 1998); Evans v. Tech. Applications & Serv's Co., 80 F.3d 954, 959-60 (4th Cir. 1996).

If the plaintiff is able to establish a prima facie case with respect to any of her claims, there is a presumption of discrimination, and the burden shifts to her employer to articulate a legitimate, non-discriminatory reason for its failure to promote her. If the employer can do so, the plaintiff must then demonstrate by a preponderance of the evidence that her employer's proffered reasons were but a pretext for its true motive of discrimination. Reeves, 530 U.S. at 143; Burdine, 450 U.S. at 252-53. Thus, at this final stage of McDonnell Douglas burden-shifting, the plaintiff's "burden . . . merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." Burdine, 450 U.S. at 256; accord Reeves, 530 U.S. at 143 (holding that upon shifting the burden back to the plaintiff, "the sole remaining issue was discrimination vel non") (internal quotation marks omitted).

The Court's preliminary inquiry under the McDonnell Douglas framework is whether a rational trier of fact could conclude that the plaintiff has established a prima facie case of discrimination. First, the plaintiff is a member of a protected class with respect to age, sex, and race. Second, although CMHP contends that the CFO position was never "open" to the plaintiff because Cochran assumed its responsibilities incrementally between 2006 and 2007, there is evidence suggesting that Cochran received a promotion that could have been the plaintiff's.[2] Third, the

---

[2] In the months leading up to Roberts's retirement from CMHP in December of 2007, Garrett sought to distribute his responsibilities among the plaintiff, Cochran, and Dodson. The allocation of this distribution was within Garrett's sole discretion. Because of the new responsibilities that she allocated to Cochran, Garrett determined in June of 2007 that he should

7

plaintiff has produced evidence of her background and performance record at CMHP to create a genuine issue of fact whether she was indeed qualified for the promotion. And finally, the defendant has shown, for purposes of establishing a prima facie case, that she was denied the promotion under circumstances giving rise to an inference of discrimination. Ordinarily, a showing that a promotion went to a person outside the plaintiff's protected class is not only necessary, but also sufficient to fulfill this element. See Amirmokri v. Baltimore Gas and Elec. Co., 60 F.3d 1126, 1130 (4th Cir. 1995); Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994). Here, Cochran falls outside the plaintiff's protected class with respect to age, sex, and race. Thus, against CMHP's motion for summary judgment, the plaintiff has established a prima facie case of discrimination based on age, sex, and race.

CMHP proffers two legitimate, non-discriminatory reasons for its decision to promote Cochran to the position of CFO: (1) his prior performance as Vice President of Asset and Risk Management; and (2) his education, namely, his undergraduate degree in mechanical engineering and his master's degree in public policy with an emphasis on public housing. As a specific example of his favorable performance, Garrett cited Cochran's ability to obtain fifteen million dollars in interim financing for the purchase of the Double Oaks Apartments, CMHP's largest acquisition to date. (Doc. No. 30: Garrett Aff. ¶ 17). Prior job performance is widely recognized as a valid, non-discriminatory basis for promotion, see Young v. Lehman, 748 F.2d 194, 198 (4th Cir. 1984), as is an employee's relative level of education. See Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir.

---

receive a change in title from "Vice President of Asset and Risk Management" to "Chief Financial Officer" and an increase in salary. Although the plaintiff took over Roberts's supervision over the accounting department, she did not receive a change in title or an increase in salary. Thus, at the very least, a genuine issue of fact exists whether the plaintiff could have, but did not, receive the promotion awarded to Cochran.

2004). See also Wileman v. Frank, 979 F.2d 30, 37 (4th Cir. 1992) (favoring an applicant with advanced degrees beyond the minimum required for a position is "rational and in no way probative of discriminatory intent").

Once an employer has met its burden of producing a legitimate, non-discriminatory reason for its decision, the plaintiff is afforded the "opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination." Burdine, 450 U.S. at 253. Although the falsity of an employer's proffered reason does not necessarily mean that the employer acted with discriminatory intent, the trier of fact will often reasonably infer as much. See Reeves, 530 U.S. at 147. Thus, a plaintiff may escape summary judgment at the pretext step of McDonnell Douglas by demonstrating sufficient evidence for a reasonable jury to find that the employer's proffered reasons are false. See id. at 148; Dennis v. Columbia Colleton Medical Center, Inc., 290 F.3d 639, 648 (4th Cir. 2002).

However, the circumstances surrounding CMHP's decision to promote Cochran to CFO present no evidence that its stated reasons are not genuine. To begin with, Garrett also promoted Dodson, an African-American male, to COO at the same time she promoted Cochran to CFO. At least with respect to the plaintiff's claim of race discrimination, the fact that Dodson received a similar promotion gives rise to an inference of non-discrimination, for CMHP would be unlikely to promote another employee for the same reason it denied a promotion to the plaintiff. See Miles v. Dell, Inc., 429 F.3d 480, 488 (4th Cir. 2005). Moreover, Garrett made the initial decision to hire the plaintiff in 2005. The fact that Garrett made this initial decision as well as the decision not to promote her in 2007 creates a "strong inference" that CMHP's stated reasons for choosing Cochran as CFO are not pretext. Proud v. Stone, 945 F.2d 796, 798 (4th Cir. 1991); Poteat v. PSC Auto. Group, No. 3:03cv129, 2006 WL 2828836, at *4 (W.D.N.C. Sept. 29, 2006). Although the plaintiff

may still present countervailing evidence of pretext, the Fourth Circuit recognized in Stone that "in most cases involving this situation, such evidence will not be forthcoming." 945 F.2d at 798.

The plaintiff offers the following as countervailing evidence of pretext: (1) her superior qualifications for the position; (2) the fact that CMHP did not advertise the position; and (3) the existence of a pattern of discrimination at CMHP whereby only white employees under the age of 40 were given promotions. These claims lack evidentiary support, and in light of the other circumstances evidenced by the record before the Court, they are insufficient to create a genuine issue of fact whether CMHP's stated reasons for promoting Cochran are pretext.

The plaintiff's claim that she was more qualified for the CFO position rests primarily upon her superior experience with accounting, including her certification as a CPA. Although the plaintiff also argues at length that Cochran lacked experience in finance and public housing when he was initially hired in 2003, this is irrelevant to the issue before the Court: whether Cochran was qualified for the CFO position he assumed four years later in 2007. The plaintiff's attempt to characterize the CFO position as requiring extensive accounting experience and CPA certification is misguided. Although the CFO supervised the accounting and property management departments, a CPA license was not an essential requirement of the position. To the extent that a CPA was essential to the original position held by Roberts, those duties requiring a CPA license were transferred to the plaintiff as Roberts gradually retired. And while the plaintiff's CPA certification may have been one factor to strengthen her candidacy for CFO, "a plaintiff seeking to rebut an employer's reliance on inferior job qualifications cannot simply compare herself to other employees on the basis of a single evaluative factor artificially severed from the employer's focus on multiple factors in combination." Hux v. City of Newport News, 451 F.3d 311, 315 (4th Cir. 2006) (citing Anderson, 477 U.S. at 271).

Nor is the fact that CMHP failed to internally or externally advertise the CFO position

evidence of pretext. It does appear that CMHP had a written policy requiring the Director of Human Resources to schedule at least one week of internal advertising for any "newly created positions." (Doc. No. 39-11 at 2). CMHP admits this procedure was not followed for Cochran's promotion to the newly-created CFO position, but as President, Garrett had express authority to make exceptions to the hiring procedure as she saw fit. (Id.). Thus, CMHP's failure to advertise did not violate company policy, nor was it particularly unusual. The record reflects that other employees, including Dodson, were also promoted absent internal advertising.

Finally, the plaintiff relies on what she perceives as a pattern of discrimination at CMHP. To support this conclusion, the plaintiff identifies two white female employees under 40 who were promoted or given positions that were not internally or externally advertised. But CMHP's practice of hiring and promoting without position advertising was not limited to white employees, as is evidenced by Dodson's promotion to COO. And even ignoring Dodson's promotion, the mere fact that two white employees under 40 were promoted, who had different positions at CMHP with different responsibilities than the plaintiff's, does not establish pretext. See Anderson v. Westinhouse Savannah River Co., 406 F.3d 248, 272-73 (4th Cir. 2005) (finding no evidence of pretext in the promotion of two employees outside the plaintiff's protected class who worked in separate divisions with separate job responsibilities). Nor is the plaintiff's perceived pattern of discrimination strengthened by her identification of two black female employees who worked under Garrett as administrative assistants, had issues working with Garrett, and were ultimately transferred to Dodson's department. There is no admissible evidence[3] that either of these employees had issues

---

[3] The plaintiff argues that one of these employees, Katrina O'Neal, filed a charge of discrimination with the EEOC, and this fact provides additional evidence of pretext. However, findings made by the EEOC cannot be used to compel a finding of discrimination given the Court's de novo review of discrimination claims. See Laber v. Harvey, 438 F.3d 404, 420 (4th

11

with Garrett because of her age, race, or sex.

Moreover, the exceptionally diverse composition of management personnel at CMHP belies the plaintiff's claim that a pattern of discrimination existed. At the time the plaintiff resigned, CMHP had eight managerial employees. Of those eight, five were African-American, four were women, and seven were over the age of 40. (Doc. No. 29: Dodson Aff. ¶ 7). Against these statistics, the isolated examples highlighted by the plaintiff do not appear indicative of the norm at CMHP.

Ultimately, the Court's proper role is not to substitute the decision-making process of employers with its own, but only to inquire whether that process was based on proper criteria under federal law. Hawkins v. PepsiCo, Inc., 203 F.3d 274, 282 (4th Cir. 2000); EEOC v. Clay Printing Co., 995 F.2d 936, 946 (4th Cir. 1992). While she disagrees with CMHP's decision not to promote her to CFO, the plaintiff has simply failed to produce evidence that this decision was based on an improper criterion, be it her age, sex, or race. In light of the entire record, no rational trier of fact could find that CMHP's proffered reasons for its decision—Cochran's prior job performance as Vice President of Asset and Risk Management and his advanced education—are false. Summary judgment in favor of CMHP is therefore appropriate on Count One, alleging discrimination under Title VII, the ADEA, and § 1981.

---

Cir. 2006). Thus, Evidence of EEOC charges—especially those filed by other employees—are irrelevant to the plaintiff's claims and prejudicial to the trier of fact. See Goldberg v. B. Green and Co., Inc., 836 F.2d 845, 848 (4th Cir. 1988) (noting that "such findings may be more prejudicial than probative"); Cox v. Babock & Wilcox Co., 471 F.2d 13, 15 (4th Cir. 1972) (upholding the trial court's exclusion of EEOC records, recognizing "persuasive reasons why such records should not be admitted"); Moss v. Lane, 50 F.R.D. 122, 127 (W.D.Va. 1970) (holding that allegations of actions taken by the EEOC were irrelevant to the discrimination lawsuit suit and striking them from the complaint). For this reason, such evidence is beyond the Court's review of CMHP's motion for summary judgment, which must be limited to "the admissible evidence forecasted by the parties . . . ." Toll Bros., Inc. v. Dryvit Sys., Inc., 432 F.3d 564, 568 (4th Cir. 2005) (emphasis added).

B.  **Retaliation**

Independent of the success of her claims for discrimination, the plaintiff may pursue a claim for retaliation under the same McDonnell Douglas burden-shifting framework. See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 656 (4th Cir. 1998). As before, the plaintiff must first establish a prima facie case for retaliation under Title VII or § 1981 by showing: (1) that she engaged in a protected activity; (2) that her employer took an adverse employment action against her; and (3) that a causal connection exists between the protected activity and the asserted adverse employment action. Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004) (citing Makey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004)). If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a non-retaliatory reason for its actions. Dowe, 145 F.3d at 656. Finally, if the employer meets this burden of production, then the plaintiff must prove by a preponderance of the evidence that the proffered reason is actually a pretext for unlawful retaliation. Rhoads v. FDIC, 257 F.3d 373, 392 (4th Cir. 2001).

The plaintiff filed an initial charge of discrimination with the EEOC on November 29, 2007, and a second charge alleging retaliation on January 30, 2008, and these actions constituted protected activity. See Carter, 33 F.3d at 460. Moreover, the temporal proximity between the plaintiff's EEOC charges and her allegations of retaliation can be sufficient to satisfy the final prima facie element. "While evidence as to the closeness in time 'far from conclusively establishes the requisite causal connection, it certainly satisfies the less onerous burden of making a prima facie case of causality.'" Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 551 (4th Cir. 2006) (quoting Williams v. Cerbertronics, Inc., 871 F.2d 452, 457 (4th Cir. 1989)). The only real issue is whether the conduct complained of by the plaintiff rises to the level of an adverse employment action.

To establish an adverse employment action, "a plaintiff must show that a reasonable

13

employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotation marks omitted). An employer's actions must normally result in some "'decrease in compensation, job title, level of responsibility, or opportunity for promotion'" to constitute an adverse employment action. Holland v. Washington Homes, Inc., 487 F.3d 208, 219 (4th Cir. 2007) (quoting Boone v. Goldin, 178 F.3d 253, 256-57 (4th Cir. 1999)). Falling short of this threshold are "petty slights or minor annoyances that often take place at work and that all employees experience." White, 548 U.S. at 68.

Many of the plaintiff's allegations of retaliation—such as being "glared at" or "ignored" by other employees—are exactly the type of petty slights that White instructs the Court to disregard. However, the plaintiff does present evidence that certain of her job responsibilities were eliminated in the months that followed the filing of her first and second EEOC charges. Prior to these charges being filed, it had been the plaintiff's responsibility to present financial statement reports to the CMHP Board of Directors at their monthly meetings. In fact, it was one of the Controller's enumerated duties. See (Doc. No. 29-6 at 2). In April of 2008, however, Cochran began making these presentations before the Board, allegedly at the request of one of its members. Moreover, for the first time since she was hired, the plaintiff was not asked to participate in CMHP's goal-setting process that year. Although it did not result in a decrease in pay or benefits, the loss of these duties may have been a decrease in the plaintiff's "level of responsibility" such that it was an adverse employment action. Holland, 487 F.3d at 219. Under the recent test set forth in White, the Court is hesitant to find as a matter of law that a loss of certain job duties would not dissuade a reasonable employee from making a charge of discrimination. See Brockman v. Snow, 217 F. App'x 201, 207

14

(4th Cir. Feb. 13, 2007) (unpublished) (refusing to find, under White, that denying an employee's request to work from home "might not be a material harm"). Thus, the Court assumes, without deciding, that the plaintiff is able to establish a prima facie case of retaliation premised on the loss of these duties and proceeds with the McDonnell Douglas burden-shifting analysis.

As a legitimate, non-retaliatory reason for the plaintiff's decrease in job responsibilities, CMHP cites Cochran's inherent authority as CFO to present financial information to the Board and the deteriorating relationship between the plaintiff and CMHP management throughout the final year of her employment. It is at this stage of burden-shifting analysis, the pretext stage, that the plaintiff's claim fails. She presents no evidence sufficient for a rational trier of fact to conclude that these were not the reasons that Cochran took over the plaintiff's duty of making financial presentations to the Board. What the record does show is gradually increasing hostility between the plaintiff and CMHP management, beginning in 2007. However, the source of this hostility appears to be that Cochran was selected as CFO, and the plaintiff became his subordinate. This caused friction between the two, and between the plaintiff and Garrett, as evidenced by email exchanges, meetings to resolve internal conflicts, and, ultimately, the plaintiff's resignation. But in parsing through the evidence generated by these events, the Court finds no suggestion that the cause of any of this workplace tension was the plaintiff's charges of discrimination.

If indeed the plaintiff suffered an adverse employment action, her only evidence of pretext is the temporal proximity between such action and her EEOC charges. Although temporal proximity may be sufficient to establish a prima facie case of retaliation, it is, by itself, insufficient evidence of pretext to escape summary judgment. Wagner v. Wheeler, 13 F.3d 86, 91 (4th Cir. 1993); Smith v. R.J. Reynolds Tobacco Co., No. 1:02cv63, 2003 WL 355646, at *5 (M.D.N.C. Feb. 11, 2003); Martin v. Nationwide Mut. Ins. Co., No. 1:99cv956, 2001 WL 604192, at *9 (M.D.N.C. Apr. 20,

2001). Accordingly, the Court will enter summary judgment in favor of CMHP on Count Six, alleging retaliation in violation of Title VII and § 1981.

### C. Breach of Contract

The plaintiff's final claim is one arising under state law for breach of contract. The plaintiff alleges that she was induced to enter into her employment with CMHP upon an oral promise made by Roberts that she would succeed him as Vice President of Business and Finance upon his retirement. As with any agreement, a party asserting breach of an employment agreement must show: (1) the existence of a valid contract; and (2) a breach of the terms of that contract. Cater v. Barker, 617 S.E.2d 113, 116 (N.C. 2005). See also Kurtzman v. Applied Analytical Indus., Inc., 493 S.E.2d 420, 425 (N.C. 1997) (searching the terms of an alleged employment agreement for "the necessary elements of an enforceable contract").

Roberts flatly denies making any promises to the plaintiff about her succession as Vice President of Business and Finance upon his retirement. (Doc. No. 32: Roberts Aff. ¶ 7). Further complicating matters is the fact that upon his retirement, Roberts's position was eliminated, and his job duties were distributed to the Controller, the COO, and the CFO. As Controller, the plaintiff took over Roberts's oversight of the CMHP accounting department. Thus, if an agreement for succession existed, CMHP argues that the agreement was honored. But even resolving these disputed matters in favor of the plaintiff, her claim for breach of contract would still fail.

The plaintiff admits that regardless of what promises Roberts may have made to her during the interview process, she understood her employment at CMHP to be that of an employee-at-will. (Doc. No. 33-1 at 29). This understanding is supported by other evidence, including the Job Description memorandums that all employees are required to periodically review and sign, which state that CMHP "has the right to revise this job description at any time. The job description is not

a contract for employment, and either you or the employer may terminate employment at any time, for any reason." (Doc. Nos. 29-3-6).

The terms of employment for an employee-at-will may be modified at any time by the employer, with continued employment serving as consideration for the modification. See Fraver v. North Carolina Farm Bureau Mut. Ins. Co., 318 S.E.2d 340, 344 (N.C. Ct. App. 1984) (citing 56 C.J.S. Master and Servant § 9 (1948)). If, as the plaintiff contends, her succession to CFO was a term of her employment, this term was altered when CMHP named Cochran as CFO in July of 2007. The plaintiff became aware of this no later than July 19, 2007, when she reviewed and signed her revised Job Description memorandum, listing her job duties and informing her that she would report directly to the CFO. (Doc. No. 29-6). Yet the plaintiff remained employed with CMHP until her resignation on June 20, 2008. By continuing her employment, the plaintiff waived any claim she might have had for breach of contract. As the North Carolina Supreme Court has explained:

> It is well settled . . . that after one party has breached a contractual provision, the non-breaching party has a choice between alternate courses of conduct. He may terminate his further liability and recover damages or he may continue his contract, choosing to receive the promisee's defective performance and regarding his right to damages as adequate compensation. Where the promisor chooses the second alternative, cases speak of the promisor's waiver by continuing to perform or to receive performance. Because such a waiver is not a mere promise, but is instead a continuation of performance, sometimes called an election by conduct, it is binding without consideration or estoppel.

Wheeler v. Wheeler, 263 S.E.2d 763, 765 (N.C. 1980) (internal citations and quotation marks omitted). See also Church v. Wachovia Sec., Inc., 2008 WL 5429604, at *13 (W.D.N.C. Dec. 30, 2008) (holding that by continuing to work after receiving "bonus payment which he considered in breach of his contract[,]" an employee-at-will "effectively waived his breach of contract claims") (citing Arndt v. First Union Nat. Bank, 613 S.E.2d 274, 280 (N.C. Ct. App. 2005)). Even assuming that Roberts promised the plaintiff the CFO position or its equivalent, any claim for breach of

contract was waived by her continued employment-at-will after CMHP failed to promote her. CMHP is therefore also entitled to summary judgment on Count Five, the plaintiff's last remaining claim.

## IV.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that the Motion for Summary Judgment (Doc. No. 28) filed by the defendant Charlotte-Mecklenburg Housing Partnership, Inc., is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties' Joint Motion to Continue Trial (Doc. No. 44) is **DENIED** as moot.

**SO ORDERED.**

Signed: May 12, 2010

Robert J. Conrad, Jr.
Chief United States District Judge